# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7517 | **DATE** | 9/03/2003 |
| **CASE TITLE** | City of Chicago vs. AT&T Broadband, et. al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion to Dismiss [7-1, 10-1, 11-1]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons set forth in the Attached Memorandum Opinion and Order, the defendants' motion to dismiss is GRANTED [7-1, 10-1, 11-1]

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 4 - 200 | |
| | Notified counsel by telephone. | date docketed | |
| X | Docketing to mail notices. | | 34 |
| X | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| klb (lc) | courtroom deputy's initials | 03 SEP -3 PM 4:24 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

| | |
|---|---|
| CITY OF CHICAGO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 02 C 7517    SEP 4 - 2003 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| AT & T BROADBAND, INC., ) | |
| COMMUNICATIONS CABLE OF ) | |
| CHICAGO, INC., LA SALLE ) | |
| TELECOMMUNICATIONS, INC., SOUTH ) | |
| CHICAGO CABLE, INC., PRIME ) | |
| COMMUNICATIONS - CHICAGO, L.L.C., ) | |
| RCN CABLE TV OF CHICAGO, INC., AND ) | |
| WIDEOPENWEST ILLINOIS, INC. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

The City of Chicago (the "City" or "Plaintiff") filed a complaint in the Circuit Court of Cook County seeking a declaratory judgment that its franchise agreements with the defendant cable providers--AT & T Broadband, Inc., Communications Cable of Chicago, Inc., LaSalle Telecommunications, Inc., South Chicago Cable, Inc., Prime Communications-Chicago, LLC, RCN Cable TV of Chicago, Inc., and Wideopenwest Illinois, Inc. ("Defendants")-by their terms, require Defendants to pay franchise fees based on the revenue derived from the provision of cable modem service. Defendants removed the action to this Court. Before this court is defendants' motion to dismiss.

I.      Factual Background

Each of the Defendants has entered into a franchise agreement with the City. The franchise agreements provide Defendants with the right to extend, install, maintain and operate a cable system within a specified franchise area in the City under the terms and conditions set forth in the agreements. Pursuant to Section 4.1 of the franchise agreements, which is governed by the local cable ordinance as interpreted and applied in accordance with Section 542 of the Communications Act, 47 U.S.C. § 542, Defendants are required to pay the City a franchise fee in the amount of 5% of their gross revenues during the period of their operation under the franchise agreements.

Defendants derive revenue not only from the provision of traditional cable television service, but also from the provision of services supplying high speed access to the Internet ("cable modem" service). Prior to about April 2002, Defendants paid franchise fees based on revenue derived from the provision of both cable television and cable modem services. On March 15, 2002, the FCC released its Declaratory Ruling holding "that cable modem service as currently provided is an interstate information service, not a cable service." <u>In re Inquiry Concerning High-Speed Access to the Internet Over Cable and Other Facilities, Internet Over Cable Declaratory Ruling and Appropriate Regulatory Treatment for Broadband Access to the Internet Over Cable Facilities, Declaratory Ruling and Notice of Proposed Rulemaking</u>, 17 F.C.C.R. 4798, 4820 at ¶ 33 (Mar. 15, 2002) (hereinafter "FCC Declaratory Ruling"). The FCC further held that "[g]iven that we have found cable modem service to be an information service, revenue from cable modem service would not be included in the calculation of gross revenues from which the franchise fee ceiling is determined." <u>Id.</u> at 4852 ¶ 105.

Shortly after the FCC Declaratory Ruling, Defendants informed the City that they would stop paying franchise fees based on revenue derived from the provision of cable modem service, and thereafter, Defendants indeed stopped paying franchise fees based on revenue derived from cable modem service. The City informed Defendants that, under the Franchise Agreements, they still are required to pay franchise fees based on revenue derived from the provision of cable modem service. Defendants refuse to pay and the City filed this declaratory action in state court. Defendants subsequently removed this action to federal court.

II.     Legal Standard

When a party moves to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted, the Court accepts as true the well pleaded allegations of the complaint and the inferences that may be reasonably drawn from those allegations. Wilson v. Ugo Formigoni, 42 F.3d 1060, 1064 (7th Cir.1994). Complaints are to be read liberally, see Conley v. Gibson, 355 U.S. 41, 47- 48, 78 S.Ct. 99, 102-03, 2 L.Ed.2d 80 (1957); Fed.R.Civ.P. 8, and the district court may grant a 12(b)(6) motion only if "it is beyond doubt that the non-movant can plead no facts that would support his claim for relief." Conley, 355 U.S. at 45-46, 78 S.Ct. at 102. A complaint which consists of conclusory allegations unsupported by factual assertions, however, fails even the liberal standard of Rule 12(b)(6). Cushing v. City of Chicago, 3 F.3d 1156, 1167 (7th Cir.1993).

III.    Discussion

The City brought this action seeking "an order declaring that, pursuant to the terms of the Franchise Agreements, Defendants are required to pay franchise fees based on the revenue derived from the provision of cable modem service." Complaint at 5, ¶ A. The City's authority to

impose franchise fees is specifically limited by Section 622 of the Cable Communications Policy Act of 1984 ("Communications Act."), 47 U.S.C. § 542. The Communications Act states that for any twelve-month period, the franchise fees paid by a cable operator "shall not exceed 5 percent of such cable operator's gross revenues ... from the operation of the cable system to provide cable services ." 47 U.S.C. § 542(b). The Communications Act expressly preempts and supersedes "any provision of law of any State, political subdivision, or agency thereof, or franchising authority, or any provision of any franchises granted by such authority, which is inconsistent with this Act." 47 U.S.C. § 556(c). Section 4 of the Franchise Agreement, which sets forth Defendants' obligation to pay franchise fees, explicitly requires that the franchise fee provision must be interpreted and applied in accordance with Section 622 of the Communications Act. Thus, the franchise agreement in this case is governed by the Communications Act.[1]

In the FCC Declaratory Ruling, the FCC declared that cable modem service is not a "cable service," but instead is an "interstate information service." FCC Declaratory Ruling, at ¶ 60. The FCC stated, "[g]iven that we have found cable modem service to be an information service, revenue from cable modem service would not be included in the calculation of gross revenues

---

[1] The parties do not dispute that the language of the Franchise Agreements is broad enough to encompass cable modem service in addition to cable television service. For example, gross revenue is defined in the Cable Ordinance as "all revenue derived *directly or indirectly* from the operation or use of all or part of a cable television system...including ... revenue from regular subscriber service fees, auxiliary service fees ..." City of Chicago Cable Ordinance, Municipal Chapter 4-280-030(N). Regular subscriber service is defined as "the distribution to subscribers of signals over the cable television system ... intended for reception by equipment other than a television broadcast receiver." 4-280-030(T). Auxiliary services means "any communications services in addition to 'regular subscriber services' including, but not limited to ... data or other electronic transmission services, ... interactive two-way services and any other service utilizing any facility or equipment of a cable television system..." 4-280-030(A). Thus, the sole question before this Court is whether Section 542 of the Communications Act prohibits the collection of franchise fees for cable modem service.

from which the franchise fee ceiling is determined." FCC Declaratory Ruling, at ¶ 105. Defendants argue that the City's Complaint fails as a matter of law because federal law prohibits the City from imposing any franchise fees on cable modem service, because defendants are already paying 5 percent of their revenues from television service, and those are the only revenues now classified as cable-related. The City argues, however, that Section 542 of the Communications Act was not intended to prohibit the collection of franchise fees on cable modem service.[2]

Prior to the release of the FCC's declaratory ruling to the contrary, cable operators and local franchising authorities believed that cable modem service was a "cable service" for which franchise fees could be collected pursuant to Section 542. The City argues that there is nothing in the FCC's declaratory ruling that would preempt the City from enforcing defendants' promise to pay franchise fees on cable modem service, because Section 542 does not apply to non-cable service, and Section 541 clearly states that nothing in Title VI (including Section 542) is intended to affect state or local authority over non-cable service. Section 541, however, pertains to general franchise requirements. The franchise fee limitation, on the other hand, is contained in Section 542, which explicitly limits the amount of fees the City may collect from the cable system. Established principles of statutory construction dictate that the general language in Section 541 does not affect the specific and express limitations on franchise fees set forth in Section 542. See, e.g., Edmonds v. United States, 520 U.S. 651, 656 (1997) (When there is a

---

[2]The City does not argue that the FCC's ruling was erroneous or that it is not entitled to deference under Chevron. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-44 (1984). The Supreme Court has confirmed that because the FCC is responsible for interpreting federal communications legislation, its decisions on ambiguous provisions of federal communications legislation must be accepted if reasonable. See Nat'l Cable and Telecomm. Ass'n, Inc. v. Gulf Power Co. et al., 534 U.S. 327, 333, 337). The City's argument centers on the ramifications of the FCC's decision.

general and a specific provision the "more specific provision controls."); Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 227 (1957) ("However inclusive may be the general language of a statute, 'it will not be held to apply to a matter specifically dealt with in another part of the same enactment...'") (citation omitted). Further, Section 541 speaks only of the State's ability to regulate cable operators who provide communication service other than cable service, it says nothing about franchise fees. Thus, the specific limitations in Section 542 control.

The City also claims that the fees it seeks on modem service are outside the definition of a cable franchise fee. A franchise fee is defined in Section 542 (g)(1) as any tax or fee imposed on a cable operator or subscriber because of its status as such. The exceptions to the fee clarify that only taxes or fees that are applied generally and uniformly to both "utilities and cable operators" fall outside the definition of a franchise fee. See 47 U.S.C. 542 (g)(2)(A). The City has not pled that the franchise fee imposed on defendants is a tax of general applicability on all Internet Service providers. Nonetheless, the City argues that the only franchise fees imposed on cable operators and/or cable subscribers solely because of their status as such are the franchise fees imposed on revenues from cable service. Thus, according to the City, those are the only franchise fees that are subject to the limitation provided by Section 542(b). Such a narrow reading, however, defies logic. In this case, the franchise fees that the City wishes to charge are only imposed on cable service providers or consumers. Given that the franchise fees at issue in this case are not applied against other providers or consumers of information services, the fee is a cable franchise free that is imposed on cable operators solely because of their status as such.

The imposition of a discriminatory tax on cable would violate the Internet Tax Freedom Act ("ITFA"). § 1104(8)(B) [47 U.S.C. § 151 note]. The ITFA expressly prohibits discriminatory

additional taxes or fees imposed on Internet service providers, including cable modem service providers. The City asserts that it can impose a "franchise fee" on defendants' cable modem service because the fee is not a "tax" but is instead a "fee imposed for a specific privilege, service or benefit conferred, citing the definition of "tax" in Section 1104(8)(A). The City's reasoning, however, is flawed. First, the fees that Congress intended to exclude were fees imposed pursuant to Section 622 or 653 (47 U.S.C. §§ 542, 573) or other fees related to obligations or telecommunications carriers under the Communications Act of 1934. The City has asserted, however, that the source of its authority to impose fees on cable modem service is outside the Communications Act, and thus outside the exemption. Specifically, the City relies upon its state-granted authority to tax the business of operating a community antenna television system. To the extent that the Illinois statute relied upon by the city would permit the City to impose a fee on cable operators that is otherwise prohibited by Section 542, the statute is preempted and superceded. Second, even if the ITFA permitted the City to collect franchise fees, the City is prohibited from collecting such fees by Section 542, because it already collects the maximum permitted 5 percent of cable service revenue. The City may not collect more fees because, as previously explained, the fees qualify as cable franchise fees that are imposed solely due to the cable operator's status as such.

The City's contention that the franchise fees, even if otherwise prohibited, would fall within the "grandfather" clause of the ITFA is also erroneous. The exception for previously existing Internet taxes applies only to such taxes that were "generally imposed" prior to October 1, 1998. ITFA at § 1101(d). The franchise fee that the City previously imposed on defendants' cable modem service revenue was not generally imposed on all providers of Internet access

services. Instead, it was imposed solely on cable operators for their provision of cable modem service, and as such, does not fall within the exception for taxes "generally imposed and actually enforced prior to October 1, 1998."

Finally, the City argues that defendants' interpretation of Section 542 should be rejected because it would lead to violations of the Fifth and Tenth Amendments of the United States Constitution. The Fifth Amendment prohibits the taking of private property for public use without just compensation, including property of local and state governments taken by the United States. U.S. v. 50 Acres, 469 U.S. 24, 31, 105 S.Ct. 451, 83 L.Ed.2d 376 (1984). The City argues that Chicago is being placed in the position of having to allow cable operators such as defendants to place and upgrade cable modem service facilities in the public way, and under defendants' interpretation of Section 542, they may not receive any compensation for that use of their property. It is well established, however, that Illinois municipalities hold public rights of way only in trust for the public, not as a proprietary interest. See AT&T v. Village of Arlington Heights, 620 N.E.2d 1040, 1042 (Ill. 1993) (holding that municipalities do not have a proprietary interest in the public streets and may not raise revenue by coercing telephone companies into franchise agreements). Moreover, this is not a case of condemnation or "dispossession" of City property, as in the cases upon which the City relies. See U.S. v. 50 Acres, 469 U.S. 24 (1984). In addition, the cable system is already in the right of way pursuant to an existing franchise agreement, which requires defendants to pay 5 percent of its gross revenues derived from cable services for that system's use of the rights-of-way.

Even assuming, *arguendo*, that the use of the public rights-of-way is a taking, the City's complaint does not allege that 5 percent of gross cable service revenue is inadequate

compensation. The Fifth Amendment only prohibits uncompensated taking of property. Metro Transp. Auth. v. Interstate Commerce Comm'n., 792 F.2d 287, 297 (2d Cir. 1986) (rate set at avoidable costs is adequate). The City does not allege that the current franchise fee of 5 percent of gross cable service revenue fails to cover the City's costs associated with the cable system's occupation of the right-of-way. Imposing a ceiling on particular rates is not a taking so long as it does not cause the City to lose money. Baltimore & Ohio Railroad Co. v. United States, 345 U.S. 146, 148, 73 S.Ct. 592, 593, 97 L.Ed. 912 (1953). The City's argument that it is entitled to more money simply because the defendants provide a new kind of service over existing lines is neither logical nor fair. The use of a cable system to deliver high speed data service does not transform the system into something outside the statutory limits on the fees imposed "with respect to any cable system." NCTA v. Gulf Power Co., 534 U.S. 327, 333 (2002) (finding that the provision of an additional service such as high-speed Internet access does not change the character of the attaching entity). Accordingly, interpreting Section 542 as a ceiling on the fees that the City may collect from cable operators that provide cable modem service does not amount to a taking under the Fifth Amendment.

The Tenth Amendment provides that, "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States ..." The Tenth Amendment applies to political subdivisions of the States as well as the States themselves. See Printz v. United States, 521 U.S. 898, 931 n. 15, 117 S.Ct. 2365 (1997). In New York v. United States, the Supreme court held that Congress had unconstitutionally "commandeered" the state legislative process by requiring state legislatures either to accept nuclear waste or to enact legislation providing for the disposal of nuclear waste generated within their borders. 505 U.S.

144, 156, 112 S.Ct. 2408 (1992). The City argues that defendants' reading of Section 542 would mean that City property, personnel and resources would be commandeered for the purpose of administering a federal regulatory program in violation of the Tenth Amendment. The City's argument lacks merit. In New York v. United States and Printz v. United States, the Court struck down legislation which coerced the States into regulating in the particular field at issue in a particular way. In contrast to both cases, Section 542(b) does not require the States to regulate cable operators, it merely places a cap on the amount of franchise fees that can be collected under a cable franchise agreement, if the City chooses to regulate cable operators. Thus, interpreting Section 542 to prevent the imposition of additional franchise fees for cable modem service does not infringe on the City's Tenth Amendment rights.

Because the city already collects the maximum lawful franchise fee pursuant to its cable television agreement, in the amount of 5 percent of gross cable service revenue, it may not collect additional amounts on cable modem service revenue.

## Conclusion

For the foregoing reasons, the defendants' motion to dismiss is GRANTED.

Enter:

_David H. Coar_
United States District Judge

Dated: